# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

In re:

GREG V. THOMASON and
DIANA THOMASON,

      **Debtors.**

**Bankruptcy Case
No. 03-42400**

_____

THOMASON FARMS, INC.,
et al.,

      **Plaintiffs,**

**vs.**

GREG THOMASON and
DIANA THOMASON, husband
and wife, et al.,

      **Defendants.**

**Adv. Proceeding Case
No. 04-6134**

_____
_____

## MEMORANDUM OF DECISION
## RE PHASE ONE ATTORNEY FEES AND COSTS
_____

**Appearances:**

MEMORANDUM OF DECISION - 1

Jay A. Kohler, Idaho Falls, Idaho, Attorney for Plaintiffs.

W. Brent Eames, Rexburg, Idaho, Attorney for Defendants Greg and Diana Thomason.

Craig Christensen, Pocatello, Idaho, Attorney for Defendant New Britain Investors, LLC.

Monte Gray, Pocatello, Idaho, Attorney for Defendant R. Sam Hopkins.

R. Sam Hopkins, Pocatello, Idaho, Chapter 7 Trustee.

## Introduction

After the Court issued its Memorandum Decision, Docket No. 138, disposing of the issues considered during Phase One of the trial of this action, Defendants Greg and Diana Thomason ("Debtors") and Defendant New Britain Investors, LLC, each filed motions seeking an award of attorney fees and costs as against Plaintiffs. Docket Nos. 140–42; 144–150. Plaintiffs filed objections to the requests. Docket Nos. 155–160.[1] A hearing was conducted on the fee motions on August 3, 2006 and, at its conclusion, the Court allowed the parties additional time to supplement the record with fee affidavits and responses. The parties have done so. Docket Nos. 178; 187. The Court has carefully considered the arguments of

---

[1] Chapter 7 Trustee R. Sam Hopkins does not object to the request for fees based upon his understanding that fees are only sought as against Plaintiffs and not the bankruptcy estate. Docket Nos. 143; 153.

MEMORANDUM OF DECISION - 2

the parties and their submissions.  This Memorandum constitutes the Courts

findings, conclusions and disposition of the issues raised by the fee motions.  Fed.

R. Bankr. P. 7052; 9014.

## Factual Background

Plaintiffs Thomason Farms Inc., together with it principals, Byron,

Marilynn, Nicholas and Sandra Thomason, filed a multi-count complaint in this

adversary proceeding against chapter 7 Debtors Greg and Diana Thomason,

William Forsberg, New Britain Investors, LLC, and Debtors' chapter 7 Trustee,

Sam Hopkins.  The Court ordered that the issues raised in the action be bifurcated

for trial.  The first portion of the trial, referred to as Phase One, involved the

parties' claims to rights in certain properties known as Agren, Teton Pastures,

Homestead, Farmstead and Sonja's House; Debtors' ownership of stock in

Thomason Farms, Inc.; ownership of certain cattle; and the amount due New

Britain on a promissory note secured by mortgages against the Teton Pastures

property.   On June 9, 2006, the Court issued its Memorandum of Decision

addressing these issues.

Relying upon various state and federal statutes and rules, Debtors

and New Britain now seek payment from Plaintiffs of attorney fees and costs

incurred thus far in this action.  New Britain contends that it was a prevailing

MEMORANDUM OF DECISION - 3

party, and that it is entitled to recover costs of $5,291.63 and attorney fees totaling

$78,297.44 under the terms of its contract and pursuant to Idaho R. Civ. P. 54(e),

Idaho Code § 12-120(3) and L.B.R. 7054.1.  Debtors also argue that they

prevailed in Phase One, and that they should recover costs of $1,751 and attorney

fees totaling $18,930 under those same statutory provisions.[2]  Plaintiffs disagree.

For the reasons discussed below, the Court will grant New Britain's

motion and award it attorney fees in the amount of $75,091.35 and $2,853.01 in

costs incurred to enforce the promissory note.  Debtors' request for fees and costs

will be denied.

**Disposition**

**A. New Britain's Costs and Fees.**

**1.  Arguments of the Parties.**

New Britain owns a promissory note executed by the individual

Thomason Plaintiffs secured by a real estate mortgage on the Teton Pastures

property.  Despite vigorously contesting the validity of the note and mortgage in

---

[2]  The parties also asserted entitlement to fees as the prevailing party under Fed.
R. Civ. P. 54(d) and Dist. Ct. L. Rule 54.1.  Those rules do not apply in bankruptcy
proceedings, except to the extent incorporated by the Federal Rules of Bankruptcy
Procedure.  *See* Fed. R. Bankr. P. 1001 (stating that the bankruptcy rules govern
proceedings in cases under title 11 of the United States Code; Fed. R. Bankr. P. 7054
(incorporating portions of Fed. R. Civ. P. 54).  Debtors' argument concerning Idaho Code
§ 12-120(3) was not raised in their pleadings, but was asserted as a possible theory of
recovery in their Answer, Docket No. 19, and raised specifically at the hearing.

MEMORANDUM OF DECISION - 4

the complaint and pretrial activities, upon commencement of Phase One of the trial, Plaintiffs stipulated that the New Britain note and mortgage were valid and enforceable. As a result of the parties' stipulation on the record, the only issues remaining for trial were the amount of the debt; the interest rate applicable to the debt; the amount New Britain should be allowed to recover for attorney fees and costs in connection with enforcing its rights under the note and mortgage; and whether New Britain should be entitled to foreclose on the property.

New Britain contends, based upon Idaho Code §§ 12-120 and 12-121, together with its loan contract with Plaintiffs, it is entitled to recover all of its costs and attorney fees associated with enforcing its rights under the note. Those fees include all those incurred during Thomason Farms' earlier unsuccessful chapter 12 case through Phase One of the trial in Debtors' bankruptcy case. It seeks reimbursement of Mr. Christensen's fees and costs in the amount of $65,398.24 for representing it throughout this adversary proceeding, and in the amount of $18,190.83 for Mr. Thomson, who has represented New Britain in the state court foreclosure action. Supp. Aff. at 3, Docket No. 178; Aff. of Dale P. Thomson at 4, Docket No. 149.

In its Memorandum, the Court decided that New Britain's calculations of the amounts due on the note were basically correct, and the Court

MEMORANDUM OF DECISION - 5

adopted its numbers as the balance due.  In addition, the Court confirmed that

New Britain had utilized the correct interest rate in figuring the balance due.

While New Britain's note and mortgage are in default, the Court declined to enter

an order allowing New Britain to foreclose at this time, since the Court decided

that Trustee Hopkins should be allowed to sell the farm property securing the New

Britain loan.  Finally, the parties agreed to reserve any issues about the amount of

fees and costs recoverable by New Britain until after the Phase One issues were

resolved by the Court.

　　　　　　To determine the prevailing party under state law the Court must, in

its discretion, "consider the final judgment or result of the action in relation to the

relief sought by the respective parties . . . and the extent to which each party

prevailed upon each of such issue or claims."  Idaho R. Civ. P. 54(d)(1)(B).

Because the Rule "mandates an award of fees only to the party or parties who

prevail 'in the action'" the fact that a party is not successful on one claim is not

fatal to a determination that the party is the prevailing party.  *Israel v. Leachman*,

72 P.3d 864, 867 (Idaho 2003).   Based upon this standard, the Court concludes

New Britain is the prevailing party in the action as it received all of the relief it

requested, except for foreclosure,  which instead will be conducted by the chapter

7 Trustee, the result of which will ultimately be the same for New Britain.

MEMORANDUM OF DECISION - 6

Plaintiffs apparently do not contest that New Britain prevailed at trial, and that it is entitled to an award of fees incurred during Phase One. Instead, Plaintiffs argue the amounts claimed by New Britain for fees must be reduced. Plaintiffs assert New Britain's participation during the Phase One trial was largely unnecessary in light of the pretrial stipulation between the parties. Plaintiffs also contend New Britain's fee request amounts to "double billing," late fees and interest assessed by the attorney against its client may not be recovered, and New Britain's attorney's practice of billing his time in quarter-hour increments is inappropriate. Plaintiffs assert no fees should be awarded for New Britain's actions taken in Thomason Farms' failed chapter 12 bankruptcy case, which was dismissed in 2003, prior to the commencement of this adversary proceeding.

### 2.     New Britain is Entitled To Recover Attorney Fees and Costs Under Applicable State Law.

Although there is no general right to recover attorney fees from another party in connection with litigation under the Bankruptcy Code, "a prevailing party in a bankruptcy case may be entitled to an award of attorney fees in accordance with applicable sate law if state law governs the substantive issues raised in the proceedings." *Thomason Farms, Inc. v. Tri-River Chemical Co.* (*In re Thomason Farms, Inc.*), 02.2 I.B.C.R. 107, 108 (Bankr. D. Idaho 2002) (citing *Ford v. Baroff*, 105 F.2d 439, 441 (9th Cir. 1997)). The amount due New Britain

MEMORANDUM OF DECISION - 7

claimed to be due on its promissory note and mortgage under state law was

challenged by Plaintiffs in this litigation.  Under Idaho R. Civ. P. 54(e)(1), a

prevailing party is entitled to attorney fees when such an award is provided by

statute or contract.  Under Idaho Code § 12-120(3), a prevailing party is entitled to

an award of fees and costs in an action to collect upon a promissory note.  *See*

*Beard v. George*, 23 P.3d 147, 152 (Idaho 2001).  In addition, here the note

provides that New Britain may recover its fees incurred in any suit to enforce its

terms.  These contractual provisions are enforceable under Idaho law.  *Thomas v.*

*Arkoosh Produce, Inc.* 48 P.3d 1241, 1250 (Idaho 2002) (quoting *Ayotte v.*

*Redmon*, 718 P.2d 1164, 1164–65 (Idaho 1986)).

   The promissory note gives New Britain grounds upon which to seek

fees and costs related to legal proceedings to collect payment upon its note.

Although the Court's copy of New Britain's note is very difficult to read, the

Court understands it to state: "If suit is instituted to collect this note or any portion

thereof, [illegible] to pay in addition to the costs and disbursements as are allowed

by law, such additional sums as the court may adjudge reasonable as attorney's

fees [illegible] suit." Promissory Note, Trial Ex. 300.  Therefore, New Britain is

entitled to collect from those who signed the note its fees incurred in taking legal

action to collect on the note and enforce the mortgage.

MEMORANDUM OF DECISION - 8

New Britain began its enforcement action by initiating a state court foreclosure suit against Plaintiffs on March 23, 2000.  Mem. Decision at 42, Docket No. 138.  Thereafter, before entry of judgment against Plaintifffs, Thomason Farms amended its bankruptcy schedules in its pending chapter 12 case to include New Britain as a creditor and Teton Pastures as property of its bankruptcy estate.  Thomason Farms' actions effectively stayed the state court proceedings, and as a result, New Britain was involuntarily drawn into the bankruptcy case.  After the dismissal of Thomason Farms' bankruptcy case without entry of a discharge or payment in full of New Britain's loan, Plaintiffs instituted this adversary proceeding in connection with Debtors' chapter 7 bankruptcy case.  One of the claims asserted by Plaintiff was to quiet title to the Teton Pastures property.  New Britain was named as a defendant in Plaintiffs' action.  New Britain asserted a counterclaim against Plaintiffs, again seeking to collect its promissory note and enforce the mortgage.

As can be seen, there has been a continuing course of litigation between the parties spanning several years in the state court action and two bankruptcy cases.  As a result, the Court concludes that all fees and costs incurred by New Britain in the various legal proceedings to enforce its contract with Plaintiffs may be recovered under applicable state law.  Put another way, New

MEMORANDUM OF DECISION - 9

Britain is not limited to recovery of only those attorney fees and costs incurred in

connection with the latest adversary proceeding, as Plaintiffs contend.

Concluding there is a legal basis supporting New Britain's request,

the Court must determine the amount of such an award, and in doing so, must

consider:

> (A) The time and labor required.
> (B) The novelty and difficulty of the questions.
> (C) The skill requisite to perform the legal service properly
> and the experience and ability of the attorney in the
> particular field of law.
> (D) The prevailing charges for like work.
> (E) Whether the fee is fixed or contingent.
> (F) The time limitations imposed by the client or the
> circumstances of the case.
> (G) The amount involved and the results obtained.
> (H) The undesirability of the case.
> (I) The nature and length of the professional relationship
> with the client.
> (J) Awards in similar cases.
> (K) The reasonable cost of automated legal research
> (Computer Assisted Legal Research), if the court finds it
> was reasonably necessary in preparing a party's case.
> (L) Any other factor which the court deems appropriate in
> the particular case.

Idaho R. Civ. P. 54(e)(3). While the Court must consider all of the above factors

in determining a reasonable fee award, it need not make specific findings as to

each. *Smith v. Mitton*, 104 P.3d 367, 376 (Idaho 2004).

> **a.    Plaintiff may Recover Reasonable Attorney Fees
> for the Bankruptcy Case.**

MEMORANDUM OF DECISION - 10

Considering the experience of Plaintiff's bankruptcy counsel, Mr.

Christensen, the complexity of the issues involved, and the hourly fees charged by

other attorneys who practice in this District, the $150.00 hourly rate used by

Plaintiff's attorney in calculating his fee is a  reasonable one.

New Britain and its attorney expended a significant amount of time

in the bankruptcy cases of Thomason Farms and in this case in an effort to enforce

its note and mortgage against Plaintiffs.  Plaintiffs have repeatedly contested New

Britain's claim.  It was not until the first day of trial in this action that Plaintiffs

formally abandoned most of their asserted defenses to New Britain's claim.  As a

result,  New Britain's participation in all aspects of Phase One of the trial of this

adversary proceeding was necessary.   Certainly, New Britain had an interest in

the outcome of the adversary proceedings because Plaintiffs were seeking to quiet

title to the property securing its note, Teton Pastures.  Moreover, the collection

history between the parties since commencement of the state court law suit,

throughout Thomason Farms' chapter 12 bankruptcy case, and now during this

adversary proceeding, clearly supports New Britain's determination that its

interests had to be actively represented during Phase One.

Plaintiffs, however, raise a valid concern in objecting to counsel's

practice of billing his time in quarter-hour increments.  While New Britain may

MEMORANDUM OF DECISION - 11

have no objection to this approach, to the extent that New Britain seeks to recover attorney fees from Plaintiffs, it must show they are reasonable in amount.  This Court has consistently held that, in order to properly document the reasonableness of attorney services, attorney time should be billed out in tenths of hours.  *See In re Voechting*, 03.4 I.B.C.R. 237, 238 (Bankr. D. Idaho 2003) (explaining the problems with billing in quarter hour time increments); *In re Castorena*, 270 B.R. 504, 512 (Bankr. D. Idaho 2001) (requiring attorney to account for services in no larger increments than tenths of hours); *In re Combe Farms, Inc.*, 257 B.R. 48, 55–56 (Bankr. D. Idaho 2001) (requesting attorney time be billed in tenth of hour increments).  To compensate for counsel's flawed approach to time-billing in this context, the Court concludes a five per cent across-the-board reduction is appropriate to protect Plaintiffs from any potential, unjustified inflation in the amount of attorney fees awarded.

In addition, the Court concurs with Plaintiffs that a deduction of $970.17 is required to reflect interest charged by counsel to client on past due payments.  Plaintiffs are responsible for payment of reasonable attorney fees – they are not liable for interest charges on payments occasioned by New Britain's delay in paying its attorney.

MEMORANDUM OF DECISION - 12

After considering all the factors enumerated in Idaho R. Civ. P. 54(e)(3), the Court finds and concludes New Britain is entitled to recover $61,206.67[3] for services provided in the bankruptcy cases by Mr. Christensen.

### b. New Britain May Also Recover Attorney Fees and Costs Incurred in State Court.

Mr. Thomson initially represented New Britain by commencing the state court foreclosure action. Once New Britain became involved in Thomason Farms' bankruptcy case, New Britain retained Mr. Christensen. However, there is no doubt Mr. Thomson provided necessary and appropriate services to New Britain. His hourly fee was $150.00 until August 2005, when his hourly rate increased to $185.00. Based upon the Court's extensive experience with hourly rates charged by local counsel to secured creditors, the Court concludes Mr. Thomson's hourly rate was reasonable and commensurate with his experience and ability.

Plaintiffs object to Mr. Thomson's inclusion of late fees in his fee request as well. Again, the Court concludes it would be unreasonable to require

---

[3] The Court arrived at this dollar amount by deducting interest charges in the amounts of: $48.41, $5.10, $4.05, $31.19, $134.89, $194.59, $139.62, $85.89, $65.21, $70.25, $61.19 and $129.78 for a total deduction of $970.17, and then reducing the remaining fees by 5% : ( $65,398.24 -970.17) x 95% = $61,206.67.

MEMORANDUM OF DECISION - 13

Plaintiffs to compensate New Britain for such charges.  The Court therefore will deduct the $1,805.09[4] in accrued late fees from this award.

Plaintiffs further object to the $5,000 in fees New Britain was previously awarded by the state court in connection with the entry of  a default judgment against Debtors Greg and Diana Thomason.  They contend that amount should be deducted from the fees they owe.  Indeed, the entry of a default money judgment against two of the individuals jointly and severally liable for the balance due on the promissory could raise interesting issues.  But this is not such an issue. Under the attorney fee provision in the promissory note, the Plaintiffs each agreed to be jointly and severally responsible for payment of reasonable attorney fees incurred by New Britain in connection with any suit initiated to collect the debt. The Court therefore concludes Plaintiffs are liable for the full amount of New Britain's fees.  Of course, Plaintiffs would be entitled to appropriate credit if New Britain receives payment for fees awarded in the judgment against Debtors.

---

[4]  The Court deducted the following labeled as service charges: $81.96, $88.79, $96.96, $100.47, $101.99, $107.43, $10.00, $10.00, $320.00, $24.84, $25.74, $43.38, $44.04, $44.70, $45.36, $46.03, $46.72, $46.72, $62.05, 63.70, $63.69, $66.81, $67.80, $61.06, $34.76, $35.28, $28.59 and $29.02.

MEMORANDUM OF DECISION - 14

After considering all of the factors set forth in Idaho R. Civ. P.

54(e)(3), the Court concludes New Britain may recover $13,884.68[5] for attorney

fees for Mr. Thomson's services.

### c.  New Britain is Entitled to an Award of Costs.[6]

The parties' contract is also unambiguous in providing that New

Britain may recover its costs incurred in enforcing the note and mortgage.  New

Britain seeks a total of $5,291.63 in costs, but it is not entirely clear whether it

bases its request on Idaho or federal bankruptcy law.  Regardless of the basis,

some of the items of costs claimed may not be recovered.

Idaho R. Civ. P. 54(d)(1) allows an award of costs to the prevailing

party in a state court action.  *See Burns v. County of Boundary*, 818 P.2d 318,

319–20 (Idaho 1991) (affirming the trial court's award of costs and fees provided

for under the parties' contract, the amount of which must be calculated pursuant to

Idaho R. Civ. P. 54).  As a matter of right, the prevailing party is entitled to the

---

[5]  Mr. Thomson requested $15,689.77 in attorney fees.  The Court deducted the $1,805.09 in interest charges to arrive at a reasonable fee amount of $13,884.68.

[6]  Under L.B.R. 7054.1 a cost bill is not timely prior to the entry of judgment. The procedural stance of this action requires the Court to treat New Britain's cost bill as timely in order to effectively and economically move this matter forward.  New Britain is not further involved with Phase Two of the trial because all the claims pending between Plaintiffs and New Britain were disposed of during Phase One.  Thus, it is appropriate that the Court consider New Britain's bill of costs even though no final judgment has been entered in this action.

MEMORANDUM OF DECISION - 15

costs actually incurred for filing fees, fees for service of pleadings and documents,

witness fees, travel expenses of witness, certified copies of documents admitted at

trial, reasonable costs for exhibit preparation, bond premiums, expert witness fees,

deposition charges and charges for one copy of a deposition.  Idaho R. Civ. P.

54(d)(1)(C).  Fed. R. Bankr. P. 7054 and corresponding L.B.R. 7054.1 also

provides for costs to the prevailing party including clerk's fees and service fees,

trial transcripts, deposition costs, and copies of papers and exhibits.  L.B.R.

7054.1(c).

       In addition to the above costs, Idaho R. Civ. P. 54(d)(1)(D) allows

the trial court to award discretionary costs to the prevailing party.  "Discretionary

costs are additional items of cost not enumerated in Rule 54(d)(1), and can include

such items as long distance telephone calls, photocopying, faxes, travel expenses

and postage."  *Automobile Club Ins. Co. v. Jackson*, 865 P.2d 965, 971 (Idaho

1993).  While the court is granted discretion to award these costs, "the burden is

on the prevailing party to make an adequate initial showing that these costs were

necessary and exceptional and reasonably incurred, and should in the interests of

justice be assessed against the adverse party."  *Id.*

       Plaintiffs' object to several of the claimed costs by New Britain.

Plaintiffs' concerns about charges for faxes, postage and copies, together with the

MEMORANDUM OF DECISION - 16

payment to Todd Erickson in the amount of $1,007 to commence foreclosure, are

well taken.[7]  While New Britain appears to base its claim to the fax, photocopy

and postage costs on the fee provision contained in the note, neither state law nor

bankruptcy law entitles New Britain to recover these items as litigation costs, as a

matter of right, from Plaintiffs.  And while some of these costs could be

recoverable under state law as discretionary costs, New Britain failed to make the

showing required by Idaho R. Civ. P. 54(d)(1)(D) that they were "necessary and

exceptional costs reasonably incurred, and should in the interest of justice be

assessed against the adverse party."  *See also Automobile Club Ins. Co.*, 865 P.2d

at 971.  New Britain also failed to meet its burden to show the $1,007 payment to

Todd Erickson should be awarded as a discretionary cost under state law.  Thus,

New Britain is not entitled to costs in the amount of $1,858.62.[8]

     In reviewing the remaining costs, the Court finds the only costs

sufficiently described as required by this Court's rules under L.B.R. 7054.1 and

---

[7] Plaintiffs expressed concern at the hearing that costs may be doubled billed by way of inclusion within the request for attorney fees.  There does not appear to the Court to be any double billing and Mr. Christensen filed a supplemental affidavit to confirm  no duplicate charges are included.  *See* Supp. Aff., Docket No. 178.

[8] This sum includes the $1,007 payment and $604.75 in photocopy charges and $40.31 in postage claimed by Mr. Thomson, Ex. A, Docket No. 149, together with Mr. Christensen's charges of $163.00 for faxes, $41.00 for postage and $2.56 for copies, Ex. A, Docket No. 141.

MEMORANDUM OF DECISION - 17

relevant state law are filing fees in the total amount of $302; deposition costs of $2,341.01; and service fees of $210.00. *See* Exs. A, Docket Nos. 141; 149. New Britain failed to assert a basis under either state or bankruptcy law for recovering recording fees, photocopying, fax, postage and title company litigation guarantee fees.

Accordingly, New Britain is entitled to recover $2,853.01 in costs from Plaintiffs.

**B. Debtors May Not Recover Attorney Fees or Costs.**

Debtors also ask to recover attorney fees and costs from Plaintiffs incurred in Phase One of the litigation. They point out that the issues resolved at trial included Plaintiffs' claims to determine ownership of four parcels of real property, ownership of corporate stock under Idaho's corporate law and the corporation's bylaws, and ownership of cattle. Resolution of all these issues was controlled by Idaho law. Debtors contend they prevailed in rebuffing Plaintiffs' claims to these assets because, instead, the Court declared them (with the exception of the cattle) to be property of Debtors' bankruptcy estate under 11 U.S.C. § 541(a). Because they prevailed, under Idaho R. Civ. P. 54(e)(1), Debtors assert that Idaho Code § 12-120(3) provides a basis for awarding attorney fees:

MEMORANDUM OF DECISION - 18

> In any civil action to recover on an open account,
> account stated, note, bill, negotiable instrument,
> guaranty, or contract relating to the purchase or sale of
> goods, wares, merchandise, or services and in any
> commercial transaction unless otherwise provided by
> law, the prevailing party shall be allowed a reasonable
> attorney's fee to be set by the court, to be taxed and
> collected as costs.
>      The term "commercial transaction" is defined to
> mean all transactions except transactions for personal
> or household purposes.  The term "party" is defined to
> mean any person, partnership, corporation, association,
> private organization, the state of Idaho or political
> subdivision thereof.

Idaho Code § 12-120(3).  Although an award of attorney fees to the prevailing

party is mandatory under this provision of the Idaho law, attorney fees "are not

appropriate . . . unless the commercial transaction is integral to the claim, and

constitutes the basis upon which the party is attempting to recover."  *Merrill v.*

*Gibson*, 87 P.3d 949, 954 (Idaho 2004).

There is a fundamental flaw in Debtors' fee request.  While state law

did indeed dictate the extent of Debtors' interests in the property at issue, the

action was, essentially, one to determine whether the assets were property of the

Debtors' bankruptcy estate.  At bottom, then, it is the federal bankruptcy law, not

state law, that formed the legal basis for the defenses to Plaintiffs' claims.  While

Debtors actively participated in defending against Plaintiffs' assertions of

ownership of the real and personal property in question, because Debtors had filed

MEMORANDUM OF DECISION - 19

a bankruptcy case, it was the chapter 7 trustee, Defendant Hopkins, who is the

official representative of the interests of the bankruptcy estate in the action. *See*

11 U.S.C. §§ 704(a) and 542(a) (trustee is accountable for, and entitled to

possession of, all property of bankruptcy estate).[9]  Simply because Debtors agreed

with and cooperating in presenting the trustee's position that the assets were

owned by their bankruptcy estate is not to say Debtors  "prevailed" in this action.

More precisely, Defendant Hopkins prevailed.

> In addition, even assuming state attorney fee law applied,  Debtors

could properly assert a claim, and they were "prevailing parties," the actions to

quiet title in the real property did not involve the validity or breach of a

commercial lease or other contract. *Merrill*, 87 P.3d at 954–55 (holding that Idaho

Code § 12-120(3) does not apply to quiet title actions); *Treasure Valley Concrete*

*v. State of Idaho*, 978 P.2d 233, 237 (Idaho 1999) (holding that Idaho Code § 12-

120(3) does not apply to real estate transactions or to issues involving the

ownership of property).  Therefore, as to any claims litigated concerning the four

parcels of real property, no attorney fees could be recovered.

> The same is true regarding the resolution of the other issues raised

during Phase One.  The test for application of the state statute is "whether [a]

---

[9]  Defendant Hopkins has not requested an award of attorney fees and costs from
Plaintiffs in this action.

MEMORANDUM OF DECISION - 20

commercial transaction comprises the gravamen of the lawsuit, that is, whether the

commercial transaction is integral to the claim and constitutes the basis upon

which the party is attempting to recover." *Dennett v. Kuenzli*, 936 P.2d 219, 230

(Idaho Ct. App. 1997) (quoting *Spence v. Howell*, 890 P.2d 714, 727 (Idaho

1995)).  The Court's determination of stock ownership rights under corporate

bylaws and state law did not implicate a commercial transaction.

Debtors also assert an entitlement to reimbursement of costs totaling

$1,751.  *See* Fed. R. Bankr. P. 7054 ("The court may allow costs to the prevailing

party . . .").  Whether litigation costs may be recovered is a procedural matter, and

in this District, that procedure is set forth in L.B.R. 7054.1.  *High Country Bed &*

*Breakfast, Inc. v. Amresco Independence Funding, Inc.*  (*In re High Country Bed*

*& Breakfast, Inc.*), 02.2 I.B.C.R. 89, 90 (Bankr. D. Idaho 2002).  The rule permits

the prevailing party to file and serve its cost bill "[w]ithin fourteen (14) days after

entry of judgment . . . ."  But in this instance, Debtors' claims for costs is

premature, because Debtors and Plaintiffs will be actively involved in the

remaining course of this litigation.  Phase Two of the trial will focus on Plaintiffs'

claims that the debt owed by Debtors to Thomason Farms, Inc. should be excepted

from discharge under § 523(a).  Therefore, it is too early to determine who

prevailed in this action, and whether Debtors should be allowed to recover their

MEMORANDUM OF DECISION - 21

costs.  Depending upon the outcome of Phase Two, if a proper basis exists,

Debtors may seek recovery of costs after conclusion of the litigation.[10]

### Conclusion

New Britain is entitled to recover $75,091.35[11] in attorney fees, and

$2,853.01 in costs, from Plaintiffs.  These fees and costs were all necessarily

incurred by Plaintiff to enforce the promissory note and are reasonable in amount.

Debtors' request for fees will be denied.  There is no legal basis for their claim.

Debtors' request for an award of costs will be denied without prejudice until Phase

Two of the trial is completed.

Dated: September 1, 2006

Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[10] In addition,  Debtors' form of cost bill provides the Court with inadequate details about the nature and purpose of the items claimed.  If resubmitted, attention should be paid to making a proper showing concerning the details of all charges, that the costs were necessarily incurred and reasonable in amount, according to L.B.R. 7054.1.

[11]  This figure includes Mr. Christensen's fees of $61,206.67, and Mr. Thomson's fees of $13,884.68.

MEMORANDUM OF DECISION - 22